# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

KENNETH JOHNSON,       )
                           )
      Plaintiff,        )
                           )
    v.                    )       No. 12-03391-CV-S-DGK-SSA
                           )
CAROLYN W. COLVIN,[1]    )
Acting Commissioner of Social Security,   )
                           )
      Defendant.     )

## ORDER AFFIRMING ALJ

Plaintiff Kenneth Johnson seeks judicial review of the Commissioner's denial of his application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381, *et seq.* Plaintiff has exhausted all administrative remedies, and judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

Johnson alleges he became disabled as of December 12, 2007, at the age of 36, and is therefore unable to engage in substantial gainful employment as a matter of law. After independent review of the record, carefully considering the arguments set forth by the parties, the Court finds the Commissioner's decision denying SSI benefits is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary. Plaintiff filed an initial application for SSI on May 19, 2008. R. at 262. On April 23, 2010, following a hearing, the administrative law judge ("ALJ") found

---

[1] As Defendant notes, Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Federal Rule of Civil Procedure 25(d), she is substituted for Michael J. Astrue as the defendant in this suit.

that Plaintiff was not disabled, and, thus, not entitled to disability benefits. R. at 112-22. On June 10, 2011, the Appeals Council granted review, vacated the ALJ's decision, and remanded the case to an ALJ for adequate evaluation of Dr. Greg Zolkowski's, D.O., opinion. R. at 134. On December 1, 2011, following a hearing, the ALJ found that Plaintiff was not disabled, and, thus, not entitled to disability benefits. R. at 10-22. On June 16, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. R. at 1-3.

## Standard of Review

A federal court's review of the Commissioner of Social Security's decision to deny benefits is limited to determining whether the Commissioner's findings are consistent with the Social Security Act, the relevant case law, and the regulations, and whether they are supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* In making this determination, the court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Id.* If substantial evidence in the record supports the Commissioner's decision, the court may not reverse because substantial evidence in the record supports a contrary result or because the court may have decided the case differently. *Id.*

## Discussion

To establish entitlement to benefits, Plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of no less than 12 months. 42 U.S.C. §

Case 6:12-cv-03391-DGK   Document 13   Filed 07/02/13   Page 2 of 10

1382(a)(3)(A).  To determine a claimant's eligibility for benefits, the Commissioner employs a five-step evaluation process.[2]  *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a).

At Plaintiff's hearing, the ALJ found that Plaintiff suffers from the following severe impairments: musculoskeletal disorder characterized as degenerative disc disease, degenerative joint disease, neck pain not otherwise specified; left arm/shoulder pain not otherwise specified; head injury described as a concussion; attention deficit hyperactivity disorder ("ADHD"); and alcohol dependence.  R. at 12.  The ALJ then determined that these disorders do not meet the requirements of any of the impairments listed in 20 C.F.R., pt. 404, subpt. P, App. 1.  Accordingly, the ALJ found Plaintiff not disabled and determined that he had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) with the following limitations: work involving only simple tasks and instructions; no more than occasional public contact; and only occasional interaction with co-workers and supervisors.  R. at 16.

Plaintiff argues the ALJ erred by: (1) failing to determine that Plaintiff's hearing loss was a severe impairment; (2) improperly finding that Plaintiff's mental impairments did not meet Listing 12.05C; (3) failing to give controlling weight to the opinion of Plaintiff's treating doctor, Dr. Zolkowski.

---

[2] There is a five-step process for determining eligibility. If the fact-finder determines at any step of the evaluation process that the claimant is or is not disabled, the inquiry does not continue. The applicant bears the burden of showing he is disabled from steps one through four of the process.  *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).  At step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform.  *Id.*  The steps proceed as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity.  If so, the applicant is not disabled; if not, the inquiry continues.  At step two, the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments that has lasted or is expected to last for a continuous 12-month period. If not, the applicant is not disabled; if so, the inquiry continues. At step three, the Commissioner considers whether the impairment or combination of impairments meets the criteria of any impairment listed in Appendix 1 of 20 C.F.R. § 404.1520.  If so, the applicant is considered disabled; if not, the inquiry continues.  At step four, the Commissioner considers if the applicant's residual functional capacity allows the applicant to perform past relevant work.  If so, the applicant is not disabled; if not, the inquiry continues.  At step five, the Commissioner considers whether, in light of the applicant's residual functional capacity, age, education and work experience, the applicant can perform any other kind of work.  20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King*, 564 F.3d at 979 n.2.

**A. Substantial evidence supports the ALJ's finding that Plaintiff's hearing loss was not severe.**

Plaintiff's first argument is that the ALJ failed to analyze the severity of his impairments, specifically failing to find that his hearing loss was a severe impairment. Plaintiff argues that the record contains numerous references to his severe hearing loss, including his routine diagnoses with Eustachian tube dysfunction; his lengthy history of tubes in his ears to control infections; and his frequent hearing evaluations revealing moderate to severe hearing loss in his right ear and conductive hearing loss bilaterally. R. at 623, 625, 639-40, 656, 697, 740, 782, 783, 785, 787, 809, 902, 906, 916. Despite this evidence, Plaintiff maintains the ALJ improperly determined that his ear impairments had only a minimal impact on his ability to perform work activities.

The Court finds that substantial evidence supports the ALJ's finding that Plaintiff's ear impairments were non-severe. In order to meet the threshold severity requirement at step two, a claimant must show (1) he has an impairment or combination of impairments which (2) significantly limits his physical or mental ability to perform basic work activities[3] without regard to age, education, or work experience. 20 C.F.R. §§ 404.1520(c), 404.1521(a). As the 8th Circuit has observed, "Severity is not an onerous requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld on numerous occasions the Commissioner's finding that a claimant failed to make this showing." *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (internal citation omitted).

---

[3] Basic work activities include physical functions such as walking, sitting, and lifting; mental functions such as understanding, performing, and remembering simple instructions; using judgment; and dealing with changes in a routine work situation. 20 C.F.R. § 404.1521(b).

4

The ALJ provided two reasons for finding that Plaintiff's hearing loss was not a severe impairment. First, the ALJ noted that in June 2009, Plaintiff reported to Dr. Jon Snow, M.D., that "to date . . . his hearing is not bothering him." R. at 625. The ALJ also noted that at the administrative hearing, Plaintiff "was able to communicate effectively." R. at 13. *See Johnson v. Apfel*, 240 F.3d 1145, 1147-1148 (8th Cir. 2001) (noting that the ALJ's "personal observations of the claimant's demeanor during the hearing is completely proper in making credibility determinations"); *see also* SSR 96-7p (noting that the ALJ may "consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements").

While the ALJ failed to discuss other evidence supporting his determination that Plaintiff's hearing loss was not a severe impairment, the record supports this determination. In January 2010, for example, Dr. David Engelking, M.D., stated that Plaintiff "was able to hear a normal conversation." R. at 720. That same month, Dr. Ken Sherry, Ph.D., stated that he "had to speak louder than average for [Plaintiff] to hear [him] adequately, but when done so [he] could communicate appropriately." R. at 733. Additionally, an audiological evaluation in September 2009 showed only mild to moderate hearing loss in the right ear and mild hearing loss in the left ear. R. at 791. In 2010, another audiological exam revealed mild hearing loss in the left ear and mild to moderately-severe hearing loss in the right ear.

Although the ALJ's opinion was devoid of thorough explanation, the record shows that he was aware of the medical evidence supporting Plaintiff's claim of hearing loss and frequent ear infections, R. at 13, and that, relying on other evidence of record, the ALJ found that this had only a de minimis effect on Plaintiff's ability to engage in substantial gainful employment on a

5

sustained basis.  Accordingly, the Court upholds the ALJ's determination that Plaintiff's hearing loss was not severe.

**B. Substantial evidence supports the ALJ's determination that Plaintiff does not meet the requirements of Listing 12.05C.**

Plaintiff also argues that the ALJ erred in finding that his conditions did not meet the requirements of disability under Listing 12.05C for "mental retardation."  At step three of the sequential evaluation process, an ALJ must consider whether a claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.920(a)(4)(iii).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  A claimant's impairment may be medically equivalent to a listing if the claimant has other impairment-related findings that are at least of equal medical significance to the required criteria. 20 C.F.R. § 416.926(b).  The claimant bears the burden of establishing that she meets a listing. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987); *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004).

Listing 12.05 provides, in relevant part:

*Mental retardation:* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity is met when the requirements in paragraphs A, B, C, and D are satisfied.

\*\*\*

C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Case 6:12-cv-03391-DGK   Document 13   Filed 07/02/13   Page 6 of 10

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05.  Thus, to meet the requirements of Listing 12.05, the claimant must show that his impairment meets the requirements set forth in the introductory paragraph and any one of the four sets of additional paragraphs A through D.  *Maresh v. Barnhart*, 438 F.3d 897, 899-900 (8th Cir. 2006).

At issue in this case is whether Plaintiff meets the requirements of 12.05C.  To meet these requirements, Plaintiff must show: (1) significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid verbal, performance, or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Plaintiff first argues that he meets the first and second requirements of Listing 12.05C because he received a full-scale IQ score of 67 in January 2010.  R. at 734.  However, as the ALJ noted, the testing psychologist, Dr. Sherry, stated that Plaintiff's IQ score was "probably an under-representation of [Plaintiff's] true capacities" due to pain he was experiencing during testing.  R. at 734.  Additionally, Dr. Sherry stated that Plaintiff had "functional capacities that [were] greater than would be expected given his testing."  *Id*.  Dr. Sherry found no marked mental limitations.  Thus the ALJ concluded that "claimant's pain interfered with his testing, possibly resulting in a lower score."  R. at 14.  The ALJ also found evidence that Plaintiff exaggerated the severity of his symptoms, leading him to conclude that Plaintiff did not meet the first two parts of the 12.05C listing.

The ALJ also found that the record was inconsistent with a finding that Plaintiff had the deficits in adaptive functioning required by Listing 12.05C.  Adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of

personal independence expected of someone in their particular age group, sociocultural background, and community setting." *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 39-40 (4th ed. 1994). As noted above, Dr. Sherry stated that Plaintiff had "functional capacities that [were] greater than would be expected given his testing." R. at 734. Additionally, while Plaintiff was in special education classes and displayed difficulties in some areas, Plaintiff reported he was able to pay bills, use a checkbook, complete a money order, count change, do laundry, do the dishes, make his bed, change sheets, take out the trash, go to the post office, shop, and prepare meals. R. at 310, 311. This evidence supports a finding of no deficits in adaptive functioning.

Accordingly, the ALJ properly concluded that Plaintiff does not meet Listing 12.05C.

**C. The ALJ properly weighed the medical opinions of record and correctly formulated Plaintiff's RFC.**

Finally, Plaintiff argues that the ALJ failed to properly weigh the medical source opinion of his treating doctor, Dr. Zolkowski, and, therefore incorrectly determined Plaintiff's RFC.

Social security regulations dictate the weight an ALJ must accord to medical opinion evidence. *See* 20 C.F.R. § 404.1527. Under the regulations, the opinions of treating physicians are entitled to substantial weight. *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993). However, a treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004). "An ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions . . . ." *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010).

In fact, the opinion of a one-time examining physician may be given greater weight than that of a treating physician if the treating doctor is adequately discredited and other medical

8

evidence supports the opinion of the one-time examining physician. *Travis v. Astrue*, 477 F.3d 1037, 1041-42 (8th Cir. 2007). Furthermore, an ALJ's decision to rely on the conclusions of non-examining doctors may be supported by substantial evidence if they conflict with a properly discredited opinion from a treating doctor and are supported by other medical evidence. *Tindell v. Barnhart*, 444 F.3d 1002, 1005-06 (8th Cir. 2006).

The ALJ disregarded Dr. Zolkowski's opinion on Plaintiff's mental limitations because it was inconsistent with the medical record as a whole. Dr. Zolkowski opined that Plaintiff was extremely limited in all mental areas, R. at 950-51, and that he had "paranoid schizophrenia and need[ed] constant supervision." *Id*. Other mental health records suggested otherwise. In 2008, Dr. David Lutz, Ph.D., performed a consultative examination and did not diagnose Plaintiff with schizophrenia. R. at 599. Rather, Dr. Lutz opined that Plaintiff "seemed able to understand and remember simple and probably moderately complex instructions but would have difficulty with complex instructions;" "seemed able to sustain concentration and persistence on probably simple tasks, but would have difficulty with moderately complex and complex tasks;" "seemed able to interact in limited to possibly demanding social situations;" and "seemed able to adapt to his environment." R. at 599.

Dr. Sherry also performed a consultative examination and did not diagnose schizophrenia. R. at 734. Dr. Sherry opined that Plaintiff could understand, remember, and carry out simple instructions. R. at 735. He also noted that "[w]orking with supervisors and coworkers would not be a problem" but that Plaintiff "likely would have difficulty working with the general public." *Id*. Dr. Annie Anderson, Psy.D., Dr. Angela Olomon, D.O., and Dr. Steven Adams, Psy.D., similarly did not diagnose Plaintiff with schizophrenia. R. at 957, 984, 988.

9

Dr. Zolkowski's opinion on Plaintiff's physical limitations was also inconsistent with the record as a whole. *See* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Dr. Zolkowski opined that Plaintiff could lift or carry 10 pounds occasionally, stand or walk two hours in an eight-hour day, and sit three hours in an eight-hour day. R. at 715. He further noted that Plaintiff needed to be in a reclined seating position one to two times a day for one hour. R. at 716. In May 2008, however, Dr. David Paff, M.D., observed that Plaintiff had "full range of motion in the lumbar spine, cervical spine, and shoulders." R. at 568. In January 2010, Dr. Engelking noted that Plaintiff had a normal gait and was able to climb onto the examining table, bend, squat, arise from squatting position, and grasp and shake hands. R. at 726. Similarly, Dr. Arthur Lorver, M.D., testified that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, R. at 67, and that there were no restrictions on his ability to stand, walk, or sit. *Id*.

Thus, Dr. Zolkowski's opinion was inconsistent with the evidence of record, and the ALJ properly discounted it. Because the ALJ based his RFC finding upon the record as a whole, including all evidence he found credible, the ALJ's RFC determination is upheld.

## Conclusion

After careful examination of the record as a whole, the Court finds the Commissioner's determination is supported by substantial evidence on the record. Accordingly, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  July 2, 2013               /s/ Greg Kays

GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT